IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT C. SMILEY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-cv-236-MEF |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | (WO - PUBLISH) |
| | ) | |
| DEFENDANT. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendants' Motion to Dismiss (Doc. # 12) filed on April 7, 2010. Robert C. Smiley ("Smiley"), an employee of the Alabama Department of Transportation ("ALDOT"), brings this suit against his employer and several supervisory or management level employees alleging a variety of wrongs including race discrimination, sex discrimination, and retaliation. The Court has carefully considered the submissions of the parties and the applicable law. For the reasons set forth below, the motion is due to be GRANTED in part and DENIED in part.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367.[1] Additionally, Defendants have not argued that the Court does not

---

[1] While Smiley fails to specifically invoke 28 U.S.C. § 1367 in the jurisdiction section of his Complaint, he does plainly bring claims pursuant to Alabama law along with the claims pursuant to federal law over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Explicitly invoked or not, § 1367 is the only plausible source

have personal jurisdiction over them.  Pursuant to 28 U.S.C. § 1391(b),[2] venue is appropriate in this district.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Smiley is an African American male.  ALDOT initially hired Smiley as a professional civil engineer trainee while he was in college at Alabama Agricultural and Mechanical University in July of 1994.  After he graduated, ALDOT hired him in a full-time position as a Graduate Civil Engineer in May of 1996.  While he has continued to be employed in this position since that time, his position title changed from Civil Engineer Graduate.

On August 18, 2008, Theresa Barksdale ("Barksdale"), a Caucasian female, became Smiley's supervisor.  Barksdale, in turn reported to William F. Adams ("Adams").  During all times relevant to this lawsuit, Joseph McInnes ("McInnes") served as Director of ALDOT.

Within eight weeks of the date when Smiley began working under Barksdale's supervision, Smiley began to experience problems with Barksdale.  He contends that she placed requirements and restrictions on him that she did not place on similarly situated Caucasian employees; that she refused to coach and have informal communication with him

---

of this Court's subject matter jurisdiction over the Alabama law claims in this lawsuit.

[2]  The Complaint improperly predicates venue on 28 U.S.C. § 1391(a), which applies only to civil actions wherein jurisdiction is founded only on diversity of citizenship.

[3]  Due to the procedural posture of this case, the following is a summary of the factual basis for the lawsuit as set forth by the allegations of the Complaint (Doc. # 1).

as set forth in the State of Alabama Performance Appraisal Manual, and that she gave him unwarranted citations and disciplinary action.  In Smiley's view, Barksdale was subjecting him to harassment and belittling him.  The problems between Barksdale and Smiley continued throughout the entire time that Barksdale supervised Smiley.

Barksdale required Smiley to request permission to go to the men's room.  If he received permission, he had to sign out on a board that all individuals in his section could see.  This board would reflect his name, time out, time returned, and the destination.  Other employees did not have to sign in and out on the board to use the restroom.  On one occasion a supervisor named Cliff Massey ("Massey"), stood outside of a men's room after Smiley received permission to use the men's room and then Massey followed Smiley back to the section.  Barksdale instructed Smiley in writing that he could not get ice from the ice machine during work hours, except on break time.  Barksdale required Smiley to ask permission to get a drink from the water fountain just feet from his work area.

Smiley submitted written rebuttals when he learned of counseling or disciplinary actions against him.  Smiley contends that the written warnings Barksdale issued were unwarranted and merely intended to harass him.  On January 9, 2009, Smiley requested a transfer from the supervision of Barksdale.  The request was not granted.  On February 19, 2009, Smiley wrote to the Equal Employment Opportunity Commission ("EEOC") and complained of discriminatory actions against him.

On March 18, 2009, Barksdale required Smiley to sign a release form with each doctor

from which he would be supplying or had previously supplied medical excuses.  She also required Smiley to answer direct questions regarding his attendance at a doctor's office. Barksdale required Smiley to respond under penalty of termination of his employment or other adverse disciplinary action.  Cliff Massey, one of Barksdale's supervisors, supported her in this endeavor.

On May 4, 2009, Smiley submitted his second transfer request.  In this request, he explained that he had suffered harassment, discrimination, and invasions of his privacy at the hands of Barksdale.  His request was ignored.

On May 18, 2009, Smiley filed a Charge of Discrimination with the EEOC.  In this Charge, Smiley explained that he had suffered discrimination on the basis of his race and his sex. On May 20, 2009, Smiley submitted a third transfer request., citing examples of events creating a hostile work environment under Barksdale's supervision.  ALDOT refused to grant Smiley's request.

In June of 2009, Barksdale continued to punish Smiley.  She placed conditions on his employment which were not placed on other similarly situated employees.  She gave him unwarranted reprimands.  Smiley felt that Barksdale was trying to push him out of his employment. Smiley continually complained of discrimination and harassment, but ALDOT did nothing to stop Barksdale or to transfer Smiley.  Smiley's health deteriorated.  On June 16, 2009, one of Smiley's doctors recommended that Barksdale make Smiley's work environment more structured and less stressful.  Barksdale disregarded this recommendation

4

and continued to harass, intimidate, and discriminate against Smiley.

On August 25, 2009, Smiley filed a complaint with ALDOT alleging continuous race based harassment and discrimination.  He accused Barksdale of failing to follow the State of Alabama Performance Appraisal Manual.  He complained of being forced to complete the medical release authorizations.  He explained that he had been falsely accused of violating work rules and that he had been not been given adequate supervision.   He revealed that he had been forced to seek permission to use the restroom or water fountain and that he had been prohibited from getting ice from the ice machine during work hours.  ALDOT took no action on this complaint.

On October 6, 2009, Smiley filed a second complaint with ALDOT alleging race based harassment and discrimination.  He complained that he had been the victim of a supervisor's "falsifying documentation to carry out an agenda." Compl. at ¶ 23.  On October 19, 2009, ALDOT gave Smiley a Proposed Suspension Notice, which stated that his suspension was proposed for "violating rules of conduct."  Smiley requested a hearing.   At the hearing, the hearing officer recommended that the charge letter be reissued stating in detail the facts that formed the basis for the charge and the specific rule or policy violations alleged.[4]  ALDOT took no action on this complaint.

---

[4]  According to Smiley, this was in violation of the State of Alabama Progressive Discipline Manual regulation which requires a hearing officer to recommend whether to uphold or revoke the suspension recommendation on the basis of the facts presented at the hearing.  The hearing officer did neither, but allowed ALDOT to redo the allegedly deficient notice.

On December 14, 2009, the EEOC issued Smiley a Right to Sue Letter.  On that same date, ALDOT sent a new Proposed Suspension Notice for the same conduct on which Smiley's suspension had previously been recommended.  On January 27, 2010, another hearing was conducted.  Smiley objected to this hearing and claims that this second hearing violated his rights.  Adams recommended suspension.  On February 4, 2010, ALDOT suspended Smiley.  On March 15, 2010, Smiley filed this lawsuit.

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Prior to the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss could only be granted if a plaintiff could prove "no set of facts . . . which would entitle him to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986).  Now, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, --- U.S. ----, 129 S. Ct. at 1949.  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the

6

defendant acted unlawfully." *Id.* While a complaint need not contain detailed factual allegations to survive a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks and citations omitted). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Id.* In considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the plaintiff. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). *Accord, Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true).

## DISCUSSION

### I.  Claims Pursuant To Federal Law

#### A.  Arguments Addressed To Title VII Claims

##### 1.  Administrative Prerequisites To Suit Pursuant To Title VII

Prior to bringing suit pursuant to Title VII, a plaintiff must file a timely charge of discrimination with the EEOC and file suit within a specified time after the receipt of a right to sue letter from the EEOC. Smiley alleges that he has met all administrative prerequisites to bringing suit pursuant to Title VII and that he filed suit within ninety days of receiving his

7

notice of right to sue.  Defendants make a bald, general assertion[5] that this suit must be dismissed because Smiley failed to comply with these requirements.  The motion is due to be DENIED as to this argument.  Nothing in this ruling precludes Defendants from making this argument in a future dispositive motion should the factual record develop in such a way as to support it.  In addition to this general contention, Defendants contend that Smiley Count Three of the Complaint, which sets forth a claim of retaliation in violation of Title VII is due to be dismissed because Smiley did not allege facts that establish his retaliation claim in the Charge of Discrimination he filed with the EEOC.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent.  *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993).  Title VII also prohibits an employer from retaliating against an employee for reporting discrimination. 42 U.S.C. §§ 2000e3(a).[6]

Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must

---

[5]  *See* Paragraph 10 of Doc. # 12.

[6]  42 U.S.C. § 2000e3(a) bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

satisfy before filing a private civil action such as this one which is brought solely pursuant to Title VII. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002). According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]"  42 U.S.C.§ 2000e-(5)(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred.").  This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256-57 (1980).

   The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980).  By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.*  Indeed, this procedural rule is not a mere technicality, but an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1994).  Thus, if a plaintiff fails to file an EEOC charge before the 180-day

limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies.  *See, e.g., Morgan,* 536 U.S. at 113 ("[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Brewer v. Alabama,* 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).[7]

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan,* 536 U.S. at 113.

Of course, the determination of whether a plaintiff has filed a timely EEOC Charge depends on when the alleged unlawful employment practice "occurred."  The United States Supreme Court has provided further clarification of the nature of this inquiry and set forth different standards for claims involving "discrete acts" and "hostile environment" allegations. *See generally*, *Morgan,* 536 U.S. 101.  In cases involving discrete discriminatory

---

[7]  Title VII's time limit on filing a Charge of Discrimination with the EEOC is not jurisdictional.  Instead, it is akin to a statute of limitations and is subject to waiver, estoppel and equitable tolling.  *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 3939 (1982).  Equitable tolling allows a plaintiff to avoid the bar of the limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim.  Equitable estoppel in this context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from filing a *timely* Charge of Discrimination with the EEOC.  No party has alleged that this case involves waiver, equitable tolling or equitable estoppel.

acts, such as termination of employment, failure to promote, denial of transfer, or refusal to

hire, a discrete discriminatory act occurs on the day that it happens.  *Morgan,* 536 U.S. at

110-16.  More specifically,

> [t]he 180-day filing period begins to run from "[a] final decision
> to terminate the employee."  *Cocke v. Merrill Lynch & Co., Inc.,*
> 817 F.3d 1559, 1561 (11th Cir. 1987).  And a "final decision"
> to terminate, "rather than actual termination, constitutes the
> 'alleged unlawful practice' that triggers the filing period.  Thus,
> the 180-day period is counted from the date the employee
> receives *notice* of the termination."  *Id.*  (internal citations
> omitted) (emphasis added).

*Wright v. AmSouth Bancorporation,* 320 F.3d 1198, 1201 (11th Cir. 2003).  "Moreover, the

180-day charge filing period does not run until the plaintiff is told that she is actually being

terminated, not that she *might* be terminated *if* future contingencies occur."  *Stewart v.*

*Booker T. Washington Ins.,* 232 F.3d 844, 849 (11th Cir. 2000) (emphasis in original).

> Beginning the charge-filing period any earlier would make little
> sense: to require a plaintiff to file a discriminatory termination
> charge with the EEOC prior to the receipt of notice of
> termination would be to require a filing prior to the occurrence
> of the discriminatory conduct, thereby charging the EEOC with
> responsibility for the arguably advisory task of investigating a
> hypothetical case of discrimination.

*Id.*

Unlike claims involving discrete discriminatory acts, hostile environment claims may

be litigated so long as at least one of the events contributing to the hostile environment was

presented to the EEOC in a Charge of Discrimination in a timely fashion.  Indeed, in

*Morgan*, the United States Supreme Court held that "consideration of the entire scope of a

11

hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan,* 536 U.S. at 106.

A court faced with a challenge to an employment discrimination plaintiff's ability to litigate certain claims must start by ascertaining the permissible scope of a judicial complaint. This task requires the Court to first review the Charge of Discrimination that the plaintiff filed with the EEOC.  *See, e.g., Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); *Robinson v. Regions Finan. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003).  No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely filed EEOC charge.  *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Robinson*, 242 F. Supp. 2d at 1079.  "Not all acts complained of, however, need have been included in the EEOC charge; rather, an employee may include in her lawsuit a claim for injury resulting from any practice which 'was or should have been included in a reasonable investigation of the administrative complaint.'" *Robinson,* 242 F. Supp. 2d at 1079 (citing *Griffin*, 755 F.2d at 1522).  "Thus, an employee's lawsuit is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination." *Robinson*, 242 F. Supp. 2d at 1079 (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  Furthermore, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear

such a claim when it grows out of an administrative charge that is properly before the court."

*Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981)[8]; *see also*

*Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 168-69 (11th Cir. 1988) (following *Gupta*).

While the Complaint is not a model of clarity,[9] it does plausibly allege facts, which

accepted as true, state a plausible claim to relief pursuant to Title VII's prohibition against

retaliation that is plausible on its face.  Specifically, Smiley alleges protected conduct in the

form of filing of a Charge of Discrimination with the EEOC in May of 2009 followed by

later acts of retaliation.  This is sufficient to put defendants on notice that such a claim exists

in the lawsuit so that they may flesh out its relevant details in discovery.  To the extent that

Defendants seek dismissal of Count Three either because it was not covered by the Charge

of Discrimination or because the Complaint insufficiently alleges facts to support a

retaliation claim, their motion is due to be DENIED.

## 2. Title VII Claims Against McInnes, Adams, And Barksdale In Their Official Capacities

All claims against McInnes in his official capacity are legally claims against the

ALDOT.  Similarly, all claims against Adams and Barksdale in their official capacities are

claims against the ALDOT.  Smiley brings claims against ALDOT pursuant to Title VII in

---

[8]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[9]  Frankly, the Complaint in this case is a mess, but so is the Defendants' motion to dismiss.  All of the attorneys in this action must improve the quality of their advocacy.

Counts Three and Four. Smiley also brings claims in these two counts against McInnes, Adams, and Barksdale in their official capacities. Any prospective injunctive relief Smiley requests could be accomplished, should he prevail, by entry of an injunction against ALDOT. Thus, the claims against McInnes, Adams, and Barksdale in their official capacities in Counts Three and Four are due to be DISMISSED as redundant to Smiley's claims against ALDOT in those counts.

### 3. Title VII Claims Against Defendants Adams And Barksdale In Their Individual Capacities

Counts Three and Four of the Complaint are brought for alleged violations of Title VII. Each of these claims purport to be made against all of the "Defendants." Consequently, Smiley purports to bring these Title VII claims against Adams and Barksdale in the individual capacities. Such claims fail as a matter of law. Title VII does not authorize suits against individuals pursuant to Title VII. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991). "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Id.* For this reason, the claims in Counts Three and Four against Adams and Barksdale in their individual capacities are due to be DISMISSED.

### 4. Title VII Sex Discrimination Claim In Count Four

Defendants argue that Smiley has failed to plead any facts in support of his claims of sex discrimination in Count Four of the Complaint. While such allegations are few, the

Court cannot say that the Complaint is devoid of any supporting factual allegations. Specifically, the Court finds a factual allegation in support of this claim in paragraph 18 of the Complaint. Accordingly, the motion to dismiss is due to be DENIED as to this argument.

**B. § 1981 Claims**

Smiley brings claims in Counts One and Two for alleged violations of 42 U.S.C. § 1981. Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, given evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exaction of every kind, and to no other.

42 U.S.C. § 1981(a). For purposes of Section 1981 the words "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).[10] Section 1981 prohibits discrimination under color of State law and non-governmental discrimination. *See* 42 U.S.C. § 1981(c).

---

[10]      In 1991, Congress passed the Civil Rights Act of 1991, which amended Section 1981 in response to the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989). In *Patterson*, the Supreme Court had held that Section 1981 did not address discriminatory conduct that occurred after the making of the contract which did not interfere with the plaintiff's enforcement of his or her contractual rights. The Civil Rights Act of 1991 amended Section 1981 to broaden the definition of "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Defendants contend that Smiley cannot assert any claims against them in their official and individual capacities under 42 U.S.C. § 1981, because such claims have been subsumed by 42 U.S.C. § 1983.  Smiley provides no response to this argument in his opposition.  It is the law of this Circuit that § 1981 claims have been "effectively merged into the section 1983 claim for racial discrimination."  *Busby*, 931 F.3d at 771 n.6.  This occurs because "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Id.* (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 735 (1989)).  *See also Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (holding that any relief available under § 1981 was duplicative of that available under § 1983).  Because § 1981 provides no different remedies against a state actor than § 1983, and since they merge into one another, Smiley's claims against the McInnes, Adams, and Barksdale --in their official capacities-under § 1981 no longer exist and are due to be dismissed with prejudice.  *See, e.g.*, *St. Louis v. Sands*, 401 F. Supp. 2d 1351, 1358 (S.D. Fla. 2005) (merging § 1981 claim brought against state actor in individual capacity with § 1983 claim).  Accordingly, to the extent that the motion seeks to dismiss all claims pursuant to § 1981 separate and apart from § 1983, it is due to be GRANTED.  The Court specifically finds such claims are set forth in Counts One and Two of the Complaint and that those claims are due to be DISMISSED.

16

This does not mean, however, that Smiley cannot bring claims pursuant to § 1983 for alleged violations of § 1981. "Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violations of the rights declared in § 1981." *Jett*, 491 U.S. at 731. Consequently, when state actors violate a person's rights declared in § 1981, that person may only seek a remedy by bringing suit pursuant to § 1983. Thus, to the extent that Smiley alleges violations of his rights pursuant to § 1981 to be free from discrimination on account of his race, he may only seek remedy for those alleged violations of his statutory rights by bringing suit pursuant to § 1983. A review of the allegations of Counts One and Two of the Complaint reveals that he has pleaded his claims in this fashion.

**C. § 1983 Claims**

Counts One and Two can be read to articulate a claim pursuant to 42 U.S.C. § 1983 seeking a remedy for alleged violations of Smiley's rights under the Fourteenth Amendment to the United States Constitution and the prohibition against racial discrimination contained in 42 U.S.C. § 1981. Section 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983[11]; *Graham v. Connor*, 490

---

[11] Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

U.S. 386, 393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994). Defendants advance a variety of arguments for the dismissal of Smiley's claims pursuant to § 1983. Those arguments are discussed individually below.

### 1. Statute Of Limitations For Claims Pursuant To § 1983

Defendants urge this Court to dismiss the Complaint to the extent that it alleges violations of §1983 that occurred more than two years prior to the filing of the Complaint on March 15, 2010. Upon a review of the Complaint, the Court finds no allegations relating to events that occurred more that two years before Smiley commenced this action. Accordingly, to the extent that the motion to dismiss is based on this statute of limitations contention, it is due to be DENIED.

### 2. Individual Capacity Claims Against McInnes

Defendants seek dismissal of any claims against McInnes in his individual capacity, presumably in Count One of the Complaint. As this Court reads the Complaint, it does not contain any claims against McInnes in his individual capacity under any of the causes of

---

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

action. Indeed, Paragraph 7 of the Complaint clearly states that McInnes is only sued in his official capacity. Therefore, the motion to dismiss such claims is due to be DENIED as MOOT.

### 3. Against McInnes, Barksdale, And Adams In Their Official Capacities

Defendants contend that the Eleventh Amendment bars any claims pursuant to § 1983 for money damages against the State of Alabama or McInnes, Barksdale, and Adams in their capacities, and Smiley apparently concedes this point. In Counts One and Two of the Complaint, Smiley seeks relief in the form of money damages from McInnes, Barksdale, and Adams in their official capacities. The Eleventh Amendment[12] grants immunity to the states in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Hans v. Louisiana*, 134 U.S. 1 (1890). Thus, absent waiver of that immunity by the State of Alabama or a specific congressional abrogation of that immunity, a suit may not be brought against a state for money damages. Here, the State of Alabama has not waived its immunity. Additionally, the statute pursuant to which Smiley brings suit does not abrogate a state's Eleventh Amendment immunity. Indeed, the Supreme Court has specifically held that states are immune from money damages in suits brought pursuant to 42 U.S.C. § 1983. *See, e.g.,*

---

[12] The Eleventh Amendment to the United States Constitution specifically states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

19

*Quern v. Jordan*, 440 U.S. 332 (1979); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits.").  Moreover, the Eleventh Amendment bars suits in federal court against individual defendants acting as "arm[s] of the State."  *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429–30 (1997)).  As a suit against a government official in her official capacity is effectively a suit against the government entity, the government official is entitled to assert those immunities which the entity itself possesses.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, all claims pursuant to § 1983 against McInnes, Barksdale, and Adams in their official capacities are due to be DISMISSED.

### 4.  Heightened Pleading

In paragraph 6 of the motion to dismiss, Defendants Adams and Barksdale argue that the Complaint should be dismissed because the allegations against them lack the specificity to overcome qualified immunity defenses they possess.  This appears to be a contention that in cases in which qualified immunity is a defense there is a "heightened pleading" standard. The Eleventh Circuit Court of Appeals has held that recent cases from the United States Supreme Court make it plain that there is no "heightened pleading" standard in cases, like this one, governed by Federal Rule of Civil Procedure 8(a).  *See Randall v. Scott*, 610 F.3d

701, 710 (11th Cir. 2010).[13]   Accordingly, to the extent that the motion is premised on a "heightened pleading" requirement it is due to be DENIED.

### 5.   Qualified immunity As A Defense To Suit

To the extent that Smiley brings § 1983 claims against Adams and Barksdale in their individual capacities, Adams and Barksdale assert that the claims must be dismissed because they are protected from such claims by qualified immunity.   Qualified immunity protects government officers sued in their individual capacities from liability for civil damages so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).   The inquiry turns on the "objective legal reasonableness of the action, assessed in light of the

---

[13]   Defendants' citation to *Davis v. Coca Cola Bottling Co.*, 516 F.3d 955, 980 (11th Cir. 2008), as authority for the proposition that there is a heightened pleading requirement for cases involving allegations of race discrimination, is misplaced.   Such a proposition is not found in either the holding of *Davis* or its *dicta*.   Moreover, the United States Supreme Court has specifically held that cases involving claims of employment discrimination are not subject to a heightened pleading standard.   *See Swierkiewicz v. Sorema, N.A.*,534 U.S. 506 (2002).   Moreover, the Court is persuaded that it is applying the correct and current standard under *Twombly, Iqbal*, and their progeny and that those cases do not allow for the application of heightened pleading in cases such as this one.

21

legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S.

603, 614 (1999) (internal quotation marks omitted); *see Hope v. Pelzer*, 536 U.S. 730, 739

(2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit,

officers are on notice their conduct is unlawful." (internal quotation marks omitted)).

To receive qualified immunity, the public official "must first prove that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts occurred."

*Lee*, 284 F.3d at 1194 (internal quotation marks omitted).  In making this determination,

instead of focusing on whether the acts in question involved the exercise of actual discretion,

a Court should assess whether they are of a type that fall within the employee's job

responsibilities. *O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004).  A Court should

ask "whether the government employee was (a) performing a legitimate job-related function

(that is, pursuing a job-related goal), (b) through means that were within his power to utilize

. . . ." *Id.*  Here, there is no disputed that Adams and Barksdale were acting within the course

and scope of their discretionary authority when they took the actions about which Smiley

complains.

"Once the defendant establishes that he was acting within his discretionary authority,

the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*  It

was the case until very recently that at this point the court should follow the so-called

*Saucier* procedure. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by*

*Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  *Saucier* mandated a two-step sequence

22

for resolving government officials' qualified immunity claims. Courts were to first determine "whether the plaintiff's allegations, if true, establish[ed] a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier*, 533 U.S. at 201). Only if the allegations satisfied this first step did the court decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Saucier*, 533 U.S. at 201.[14] Qualified immunity is applicable unless the officials conduct violated a clearly established federal right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

A unanimous Supreme Court effected a paradigm shift in the law of qualified immunity in 2009 when it decided *Pearson v. Callahan*, which held that the *Saucier* procedure was no longer mandatory. 129 S. Ct. at 818 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). This decision allows the judges of the district courts and courts of appeal to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.*

Adams and Barksdale argue that Smiley has not sufficiently alleged a violation of any of his rights under the federal constitution.   It is clear from the Complaint that Smiley

---

[14]Prior to *Saucier*, the Supreme Court's cases held that "the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." *See County of Sacramento v. Lewis,* 523 U.S. 833, 841, n.5 (1998). Saucier made this "better approach" the only approach.

contends that both Adams and Barksdale violated his right to be free from discrimination on the basis of his race and sex.  He also alleges a discriminatory retaliation claim and a deprivation of his protectable interest in his job.  The Eleventh Circuit Court of Appeals has repeatedly held, in the qualified immunity context, that the right to be free from employment discrimination on the basis of race is clearly established.  *See, e.g., Rioux v. City of Atlanta*, 520 F.3d 1269, 1283 (11th Cir. 2008); *Bogle v. McClure*, 332 F.3d 1347, 1355 (11th Cir. 2003); *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1378 (11th Cir.1997).  This right derives from the Equal Protection Clause of the Fourteenth Amendment and § 1981.  Similarly, the Equal Protection Clause of the United States Constitution affords an employee the right to be free from intentional employment discrimination on the basis of sex.  *See, e.g., Davis v. Passman*, 442 U.S. 228, 234-35 (1979); *Snider v. Jefferson Cmty. College*, 344 F.3d 1325, 1331 (11th Cir. 2003); *Nicholson v. Georgia Dep't of Human Res.*, 918 F.2d 145, 148 (11th Cir. 1990).  Taking the facts alleged as true, this Court cannot find that qualified immunity shields Adams and Barksdale from litigating claims based on their actions of alleged intentional employment discrimination on the basis of race or sex.

The claims of retaliation are, however, another matter.  The Equal Protection Clause does not clearly establish a right to be free from workplace retaliation.  *See, e.g., Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340-41 (11th Cir. 1995); *Wilborn v. S. Union State Cmty. Coll.*, 720 F. Supp. 2d 1274, 1308 n.28 (M.D. Ala. 2010); *Zeigler v. Ala. Dep't of Human Res.*, 710 F. Supp. 1229, 1250 (M.D. Ala. 2010).  Consequently, the Court is compelled to

24

find that Smiley has not alleged a clearly established violation of a right under that clause to be free from workplace retaliation for protected conduct relating to claims of sex discrimination.  On the other hand, § 1981 clearly does establish a right to be free from workplace retaliation for protected conduct relating to claims of race discrimination.  For this reason, Adams and Barksdale are entitled to qualified immunity on Smiley's claims pursuant to § 1983 as they pertain to alleged workplace retaliation after he engaged in protected conduct relating to his claims of sex discrimination and so those retaliation claims are due to be DISMISSED.  On the other hand, Adams and Barksdale are not entitled to qualified immunity on Smiley's claims pursuant to § 1983 as they pertain to alleged workplace retaliation after he engaged in protected conduct relating to his claims of race discrimination as those rights were clearly established as of the time the Adams and Barksdale allegedly violated them.

Next, the Court must address whether, as Smiley argues, he can use § 1983 to seek vindication of rights he alleges are created by another federal statute, namely, the Health Insurance Portability and Accountability Act, 42 U.S.C. § 300gg, *et seq.* ("HIPPA").  In general HIPPA governs confidentiality of medical records and regulates how covered entities can use or disclose individually identifiable medical information about an individual.  45 C.F.R. § 164.512.  However, HIPPA regulations do not expressly or implicitly confer a private right of action on an individual.  *See, e.g,. O'Donnell v. Blue Cross Blue Shield of Wy.*, 173 F. Supp. 2d 1176 (D. Wyo. 2001); *Means v. Indep. Life & Accident Ins. Co.*, 963

F. Supp. 1131, 1135 (M.D. Ala. 1997).  Section 1983 provides a federal remedy for actions taken under color of state law which violate Constitutionally-provided rights and certain rights created by federal statute.  *See Maine v. Thiboutot*, 448 U.S. 1 (1980).  "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."  *See, e.g., Blessing v. Freestone,* 520 U.S. 329, 340 (1997) (emphasis in original).  *Accord, Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002). In order to have a viable cause of action under Section 1983 based on the violation of a federal statute, however, a plaintiff must establish that the statute allegedly violated clearly and unambiguously confers on the plaintiff enforceable rights.  *Gonzaga*, 536 U.S. at 283. As this is not the case with respect to HIPPA, the Court finds that Adams and Barksdale are due the protections of qualified immunity from such a claim to the extent Smiley brings one against them pursuant to § 1983 and accordingly any such claims are due to be DISMISSED.

Finally, the Court must address the qualified immunity defense as it applies to Smiley's claims that Adams and Barksdale deprived him of the "protectable interest in his job and a protectable interest in the freedom to perform his job."   Compl. at ¶ 31.  In his brief in opposition to the motion to dismiss, Smiley clarified that he contends that he had a "protectable property interest in his continued employment and that Barksdale infringed upon and violated that clearly established federal constitutional right."  *See* Doc. # 16 at p.7.  He further contends that Barksdale and Adams violated his rights to due process under the Fourteenth Amendment by violating various procedures relating to the way in which his

appeal of his suspension was handled. *Id.* at p. 8.  The Eleventh Circuit Court of Appeals has

explained that

> The Fourteenth Amendment protects against the government's deprivation of
> liberty or property without procedural due process. *Board of Regents of State
> Colleges v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548
> (1972).  State law determines whether a public employee has a property
> interest in his or her job. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074,
> 2077, 48 L. Ed. 2d 684 (1976); *Barnett v. Housing Auth. of Atlanta*, 707 F.2d
> 1571, 1576 (11th Cir. 1983).  A constitutionally protected property interest is
> created if there are "rules or mutually explicit understandings that support [a]
> claim of entitlement." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S. Ct.
> 2694, 2699, 33 L. Ed. 2d 570 (1972).  To obtain a protected property interest
> in employment, a person must have more than a mere unilateral expectation of
> continued employment; one must have a legitimate claim of entitlement to
> continued employment. *Roth*, 408 U.S. at 577, 92 S. Ct. at 2709.

*Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir. 1991).  Smiley has alleged that he had a

protected property interest and he has alleged facts which he contends if proven establish a

deprivation of that property interest without due process of law.   Accordingly, the Court

cannot say that qualified immunity shields Adams and Barksdale at this stage of the

litigation.  To the extent that they contend otherwise, their motion is due to be DENIED.

## II. Claims Pursuant To State Law

### A.  State Law Claims Against ALDOT And Against McInnes, Barksdale, And Adams In Their Official Capacities

In Counts Five, Six, Seven, and Eight, Smiley alleges a variety of claims against

McInnes, Barksdale, Adams, and ALDOT.  To the extent that these claims are brought

against ALDOT and against McInnes, Barksdale, and Adams in their official capacities,

Defendants contend that the Alabama Constitution provides them with absolute immunity. Smiley has failed to respond in any way to this contention. The Court finds the contention is well taken.

Pursuant to Article I, § 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity." The sovereign immunity this provision of the Alabama Constitution provides is a "nearly absolute protection from state law claims." *LeFrere v. Quezada*, 582 F.3d 1260 (11th Cir. 2009). Immunity pursuant to this provision extends to state agencies which cannot be sued for money damages. *See, e.g., Lyon v. River Road Constr., Inc.*, 858 So. 2d 257, 260-61 (Ala. 2003), *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989). Additionally, this provision extends to state officers or employees sued in their official capacities when the action is, in effect, one against the state. *Id.*

As previously noted, Smiley makes no attempt to refute Defendants' claims to immunity from suit pursuant to this provision of the Alabama Constitution, nor does Smiley attempt to distinguish these cases. Accordingly, the Court finds that all of Smiley's state law claims against McInnes, Barksdale, and Adams in their official capacities are due to be DISMISSED. Additionally, the Court finds that all of Smiley's state law claims against ALDOT are due to be DISMISSED.

**B. State Law Claims Against Barksdale And Adams In Their Individual Capacities**

28

### 1.  Count Five: Outrageous Conduct

Count Five of the Complaint sets forth a claim pursuant to Alabama law for the tort of outrage.  Defendants urge the Court to dismiss this claim because Smiley has failed to plead sufficient facts to support such a claim.   Smiley contends that the allegations of the Complaint are sufficient, but states that he is willing to make a more definite statement if necessary.

Under Alabama law, the tort of outrage is extremely limited.  *See, e.g., Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).  In Alabama, to prevail on a claim of outrage, a plaintiff must prove that the defendant's conduct: "(1) was intentional and reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993).  Conduct is only actionable, however, if it is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981).  The tort of outrage "does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.'"  *Buzbee v. Ala. Waste Servs., Inc.*, 709 So. 2d 61, 67 (Ala. 1998) (quoting *Inmon*, 394 So. 2d at 364-65).  As a result, outrage "is a very limited cause of action that is available only in the most egregious of circumstances."  *Thomas*, 624 So. 2d at 1044.  Indeed, it is so limited that the Alabama Supreme Court has recognized it in regard to only three kinds of conduct: (1)

wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment.[15]  *Potts*, 771 So. 2d at 465.

Smiley's allegations are devoid of any facts tending to establish that Adams or Barksdale subjected him to violent or disturbing sexual acts, indecent or lewd comments, unwanted touching or groping, or even sexual jokes or innuendo.  *See Thornton v. Flavor House Prods., Inc.*, No. 1:07-cv-712, 2008 WL 5328492 (M.D. Ala. Dec. 19, 2008) (Waktins, J.) (describing the facts of the principal cases in which the Alabama Supreme Court has found sexual harassment to be so egregious as to qualify for the tort of outrage). A review of all of the facts alleged in the Complaint in this case compels the conclusion that Smiley has failed to plead factual content that allows the Court to draw a reasonable inference that Adams or Barksdale is liable for the claim pursuant to Alabama law for the tort of outrage.   Accordingly, the claims in Count Five are due to be DISMISSED.

### 2.  Count Six, Seven And Eight

Defendants contend that Alabama law provides immunity from civil liability for the remaining claims against them in their individual capacities.  Specifically, they invoke the

---

[15]   The egregious sexual harassment cases recognizing the tort of outrage are not limited to the context of an employment relationship. *See, e.g., O'Rear v. B.H.*, ___ So. 3d ___, 2011 WL 835061 at *9-10 (Ala. Mar. 11, 2011) (affirming jury verdict for plaintiff on outrage claim and recognizing that while the tort of outrage is extremely limited it did extend to a case where a family doctor asked to help plaintiff, when he was a minor with emotional problems, but the doctor instead exploited those problems and began to ply the minor with drugs, including very addictive opiate-based drugs, in exchange for homosexual sex with the doctor).

doctrines set forth in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) and its progeny. Smiley makes no attempt whatsoever to refute this contention.  The allegations of the Complaint arise out of the way in which Adams and Barksdale supervised Smiley as an employee of the ALDOT.  This is the kind of conduct is within the explicit scope of the *Ex parte Cranman* immunity.  Accordingly, these claims are due to be DISMISSED.

## CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) is GRANTED in part and DENIED in part as set forth more specifically below:

1. To the extent that it seeks the dismissal of claims against Defendant Joe McInnes in his individual capacity, it is DENIED as MOOT.  The Complaint contains not claims against McInnes in his individual capacity,  Should Smiley intend to bring claims against Defendant Joe McInnes in his individual capacity, he must seek leave to amend his complaint which currently contains no claims under either state or federal law against Joe McInnes in his individual capacity.

2. To the extent that it seeks dismissal of the claims pursuant to Title VII against McInnes, Adams and Barksdale in their official capacities, it is GRANTED and those claims are DISMISSED.

3. To the extent that it seeks dismissal of the claims pursuant to Title VII against Adams and Barksdale in their individual capacities, it is GRANTED and those claims are

DISMISSED with PREJUDICE.

4.  To the extent that it seeks the dismissal of claims pursuant to Title VII against any defendant other than the Alabama Department of Transportation, it is GRANTED. Accordingly, it is ORDERED that all claims in Counts Three and Four against any defendant other than Alabama Department of Transportation are DISMISSED.

5.  All claims pursuant to 42 U.S.C. § 1981 *alone* are DISMISSED with PREJUDICE.

6.  To the extent that it seeks the dismissal of claims pursuant to §§ 1981 and 1983 against Defendants Theresa Barksdale, Joe McInnes, and William Adams in their official capacities, it is GRANTED and those claims are DISMISSED with PREJUDICE.

7.  To the extent that it seeks the dismissal of all claims against the Alabama Department of Transportation pursuant to 42 U.S.C. § 1983, it is GRANTED and those claims are DISMISSED with PREJUDICE.

8.  To the extent that it seeks the dismissal of all claims against Adams and Barksdale in their individual capacities pursuant to 42 U.S.C. § 1983 for alleged violations of Smiley's claims that he was subjected to unlawful retaliation because he complained of sex discrimination in the workplace, it is GRANTED and those claims are DISMISSED with PREJUDICE.

9.  To the extent that it seeks the dismissal of all claims against Adams and Barksdale in their individual capacities pursuant to 42 U.S.C. § 1983 for alleged violations of HIPPA, it is GRANTED and those claims are DISMISSED with PREJUDICE.

10.  To the extent that Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) seeks the dismissal of all claims pursuant to Alabama law against ALDOT, it is GRANTED and those claims are DISMISSED with PREJUDICE.

11.  To the extent that Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) seeks the dismissal of claims pursuant to Alabama law against Defendants Theresa Barksdale, Joe McInnes, and William Adams in their official capacities, it is GRANTED and those claims are DISMISSED with PREJUDICE.

12.  To the extent that Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) seeks dismissal of the claims pursuant to Alabama law contained in Count Five (Tort of Outrage), it is GRANTED and those claims are DISMISSED without PREJUDICE.

13.  To the extent that Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) seeks dismissal of the claims pursuant to Alabama law contained in Counts Six, Seven, and Eight against Adams and Barksdale in their individual capacities, it is GRANTED and those claims are DISMISSED without PREJUDICE.

14.  For purposes of clarity, the Court notes that this Memorandum Opinion and Order has DISMISSED all claims against Defendant Joe McInnes.

15.  Except as specifically noted above, Defendants' 12(b)(6) Motion to Dismiss (Doc. # 12) is DENIED.

16.  Counsel for all parties are ADMONISHED to improve the quality of their written work product for the duration of this case.  All counsel of record are further ORDERED to

33

review the text of Federal Rule of Civil Procedure 11 prior to submitting any further legal arguments to this Court.  The wonderful world of computers allows all of us to cut and paste large blocks of text, but that is simply no substitute for thoughtful research of the law and its application to a particular case, careful articulation of specific legal arguments, and logical organizational structure.  Reading the submissions of the defendants' counsel, the Court often felt like paragraphs were plucked from earlier briefs without any thought whatsoever about the meaning of the words inserted.  Moreover, it is simply not adequate or appropriate to ignore arguments raised by opposing counsel.  Advocates must respond either with refutation supported by reference to applicable legal authorities or concession.  Reading the brief of the plaintiff's counsel, the Court often imagined off-the-cuff dictation of lawyerly-sounding phrases without any legal research of analysis whatsoever.  When the Court is handicapped by such poor advocacy, deciphering the meaning of the arguments and ascertaining the actual applicable legal principles necessarily takes a great deal of the Court's time.  It is not fair to the parties in this case, or in other cases, for shoddy advocacy to delay justice.

17.  Finally, it is hereby ORDERED that each attorney of record in this case shall file an individual certification affirming that they have read this Memorandum Opinion and Order in its entirety.  These certifications shall be filed by no later than **April 7, 2011**.

DONE this the 30th day of March, 2011.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

34